**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHAWN GIBSON DELOSH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20-cv-01262-STA-jay** |
| | ) | |
| **STEVE UPTON, SR.** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**ORDER DENYING § 2254 PETITION, DENYING CERTIFICATE OF**
**APPEALABILITY, CERTIFYING APPEAL IS NOT TAKEN IN GOOD FAITH, AND**
**DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Before the Court is the *pro se* petition under 28 U.S.C. § 2254 of Petitioner Shawn Gibson Delosh, Tennessee Department of Correction prisoner number 303138, an inmate incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee. (ECF No. 1.) For the reasons explained below, the § 2254 petition is **DENIED**.

## BACKGROUND

A jury convicted Petitioner of promoting the manufacture of methamphetamine, in violation of Tennessee Code Annotated § 39-17-433(a)(1). *State v. Delosh*, No. W2018-00272-CCA-R3-CD, 2019 WL 920358 (Tenn. Crim. App. Feb. 22, 2019). Petitioner was sentenced as a career offender to twelve years of imprisonment, which was "to be served consecutively to his prior sentences and parole revocations." *Id.* Petitioner appealed his conviction and sentence to the Tennessee Court of Criminal Appeals ("TCCA"). *Id.* The TCCA affirmed the judgment of the state trial court. *Id.* Petitioner did not file an application for permission to appeal to the Tennessee Supreme Court. *See* Tenn. R. App. P. 11.

A.  **Trial Proceedings**

The police searched Petitioner's home in September of 2016 and found items associated with methamphetamine manufacturing.  *Delosh*, 2019 WL 920358, at *1.   These items included aluminum foil with methamphetamine residue, a plastic bottle—or "shake lab"—used to cook methamphetamine, empty cans of "camp fuel," and several burn piles that contained residue from methamphetamine cooking or "sludge."  *Id*.  Petitioner admitted during the search that he was a methamphetamine user, but he denied manufacturing the drug.  *Id*.

At trial, the State introduced evidence showing that Petitioner and his girlfriend Beth McDonald leased the property where the methamphetamine materials were discovered.  *Id*. Investigator Stoney Hughes, who had specialized training in the area of "homemade meth labs," testified that he had assisted in the search of the property.  *Id*.  Hughes testified that he found "aluminum foil that had burn marks on it, as well as a plastic bag corner," which indicated methamphetamine use.  *Id*.  Photographs of the items and where they were found were admitted into evidence and viewed by the jury.  *Id*.

Hughes also searched the outside of Petitioner's residence and testified that "when someone is cooking meth, it's difficult to discard the remnants of a shake lab or the gas generator." *Id*.  He explained that "the only way to get rid of the evidence is to attempt to burn it."  *Id*. Hughes testified that there was a "burn pile" on Petitioner's property, "and that many of the components necessary for the production of methamphetamine had been destroyed in it."  *Id*.  He also found a "Dr. Pepper bottle" between a shed and the house, which he identified as a "gas generator" of a methamphetamine lab due to "the hole in the top of the bottle."  *Id*.  Hughes explained the significance of the hole at the top of the bottle as follows:

> They'll stick a tubing into the hole and shake the bottle and the acid as it mixes the sulfuric acid, as it mixes with the salt will create the hydrochloric gas and it will go through the tubing and then it'll go down.   Whatever container they have the liquid in to turn it back into a salt.   It's called gassing it off.

*Id*. at *2.   Hughes confirmed that there was hydrochloric acid residue inside the bottle found on Petitioner's property.   *Id*.   According to Hughes, the methamphetamine lab was "a couple of weeks [old] at most" because there was still white residue inside the bottle while the outside was clean.   *Id*.   Hughes also noted that the grass underneath where the bottle was discovered was still alive, meaning the lab was "very recent" or "no more than a couple of weeks."   *Id*. at *3.

Hughes confirmed that cans of camp fuel and paint thinner, both of which were flammable liquids commonly used as a solvent for "shake labs" were found in the backyard of Petitioner's property.   *Id*. at *2.   He acknowledged, however, that other components necessary to produce methamphetamine were not found on the property, "including 'pseudophed pills,' blister packs, and lithium batteries."   *Id*.

McDonald testified for Petitioner's defense.   *Id*. at *3.   She claimed that she had not observed illegal activity on the property.   *Id*.   She confirmed that a large party with between 300 to 400 guests had occurred on the property at the end of June of 2016—approximately three months before the search of the property.   *Id*.   McDonald testified that several bonfires on the property were started with camping fuel and gasoline.   *Id*.   McDonald's oldest daughter testified consistently with McDonald.   *Id*.

Petitioner testified in his own defense.   *Id*.   He was shown a photograph of the Dr. Pepper bottle, but he claimed that he had never seen it.   *Id*.   Petitioner confirmed that a large party had occurred on the property in June and that camping fuel was used to start a bonfire.   *Id*.   Petitioner denied knowledge of the "meth sludge" found on the property.   *Id*.   He denied cooking

methamphetamine, but he admitted on cross-examination that he had been a methamphetamine user for nearly 15 years.  *Id*.  Petitioner recalled that during the search, Hughes said that he "put [Petitioner] in prison last time, [and] he was going to put [Petitioner] in prison this time too" before finding anything on the property.  *Id*.

### B.  State Post-Conviction Proceedings

Petitioner filed a *pro se* petition for state post-conviction relief on May 3, 2019. (ECF No. 12-11 at PageID 627-35.)   With the assistance of appointed counsel, Petitioner filed a supplement to his original petition, raising 10 claims of ineffective assistance of counsel.   (*Id*. at PageID 640-41.)   The state habeas trial court held an evidentiary hearing on the petition and denied relief.   (ECF No. 12-12; ECF No. 12-11 at PageID 656-60.)   Petitioner appealed, and the TCCA affirmed the denial of his petition.   *Delosh v. State*, No. W2019-01760-CCA-R3-PC, 2020 WL 5667487, at *1 (Tenn. Crim. App. Sept. 23, 2020).   The Tennessee Supreme Court denied Petitioner's application for discretionary review on January 14, 2021.[1]   (ECF No. 12-18 at PageID 828.)

### C.  Federal Habeas Review

On November 19, 2020, Petitioner filed his § 2254 petition and a memorandum of law. (ECF No. 1 & ECF No 1-1.)   He raises numerous claims of ineffective assistance of trial counsel. (*See generally* ECF No. 1-1 at Page ID 14-15.)   According to Petitioner, trial counsel was

---

[1] Respondent moved for a stay of the proceedings pending the Tennessee Supreme Court's disposition of Petitioner's application for discretionary review.  (ECF No. 8.)  This Court granted the motion and stayed and administratively closed the case on December 29, 2020.  (ECF No. 10.) After the Tennessee Supreme Court denied Petitioner's application, Respondent moved to lift the stay and reopen this case.  (ECF No. 11.)   The Court granted the motion and reopened the case on February 10, 2021.  (ECF No. 13.)

ineffective for failing to do each of the following: (1) adequately communicate with him prior to trial, explain the defense theory, and prepare him to testify at trial; (2) negotiate a more favorable plea agreement; (3) challenge the legality of the search of his property that led to the discovery of the methamphetamine evidence; (4) interview potentially exculpatory witnesses prior to trial; (5) investigate his case and "identify an alternative source for the evidence of methamphetamine manufacturing found on [his] property"; (6) retain an expert to examine the drug and physical evidence found on his property; (7) move to strike a biased juror; (8) adequately challenge the state's evidence at trial; (9) object to Investigator Hughes's testimony regarding meth lab operations; and (10) object to improper impeachment of Petitioner on cross-examination.  (*Id.*)

After the Court issued an order directing Respondent to file the state court record and a response to the § 2254 petition (ECF No. 6), Respondent filed the state court record (ECF No. 12) and filed an answer (ECF No. 14).   Petitioner filed a reply.   (ECF No. 17.)

## LEGAL STANDARDS

### A.  Federal Habeas Review

Federal courts have the statutory authority to issue habeas corpus relief for persons in state custody pursuant to § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").   *See* 28 U.S.C. § 2254.   Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.   28 U.S.C. § 2254(d).   In that circumstance, the federal court may not grant relief unless the state court decision is "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the evidence presented in state court.   28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).   An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies that principle to the facts of a prisoner's case."   *Id.* at 413.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."   *Wood v. Allen*, 558 U.S. 290, 301 (2010).   The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary.   *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).   A state court's factual findings are only unreasonable where they are "rebutted by clear and convincing evidence and do not have support in the record."   *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks and citation omitted).

**B.   Exhaustion**

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have exhausted the available state court remedies.   28 U.S.C. § 2254(b)(1)(A).   A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim

sought to be redressed in a federal habeas petition to the state courts pursuant to 28 U.S.C. § 2254(b)-(c). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner must "fairly present" each claim to each appropriate state court, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). In Tennessee, a petitioner exhausts state remedies on a claim when the claim is presented to at least the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (citing Tenn. Sup. Ct. R. 39).

"To be properly exhausted, each claim must have been fairly presented to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (internal quotation marks and citation omitted). "Fair presentation" requires the petitioner to provide state courts with the "opportunity to see both the factual and legal basis for each claim." *Id*. at 414-15. While a petitioner need not cite "chapter and verse" of federal constitutional law to fairly raise a claim, the petitioner must "make a specific showing of the alleged claim." *Id*. at 415 (citing *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

To fairly present a federal claim, a prisoner must present the same facts and legal theory to the state courts as is raised in his federal habeas petition. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013). In evaluating whether a prisoner has "fairly presented" a claim to a state appellate court, the controlling document is the inmate's brief. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

7

## C.  Procedural Default

The procedural default doctrine is ancillary to the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (noting interplay between exhaustion rule and procedural default doctrine).   If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review.  *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *Walker v. Martin*, 562 U.S. 307, 315 (2011).

Where a claim has never been presented to the state courts, but a state court remedy is no longer available (such as when an applicable statute of limitations bars a claim), the claim is technically exhausted due to the expiration of potential remedies, but still barred by procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).   Tennessee's one-year statute of limitations and "one-petition" rule on post-conviction petitions generally prevent a return to state court to litigate any additional constitutional claims.  *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one-petition" rule); *Hodges*, 727 F.3d at 530 (noting that a Tennessee petitioner "no longer ha[d] any state court remedies to exhaust" when he failed to present claim in initial post-conviction petition).

"As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error."  *House v. Bell*, 547 U.S. 518, 536 (2006).   A petitioner establishes cause by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule."  *Davila v. Davis*, 582 U.S. 521, 528 (2017) (internal quotations marks and citation omitted).   To establish

8

prejudice, "a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to *his actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (internal quotation marks and citation omitted). The burden of showing cause and prejudice is on the petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 750).

The Supreme Court has also recognized a "miscarriage of justice" exception to the procedural default rule. *Schlup*, 513 U.S. at 315. This exception only applies in the "extraordinary case" and requires a petitioner to establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 321.

## ANALYSIS

The framework for assessing Petitioner's claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that Petitioner show two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id*. at 687. If the petitioner fails to show either element, his claim fails, and the Court's inquiry ends. *Id*.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. When reviewing trial counsel's performance, a court must make "every effort" to eliminate "the distorting effects of hindsight" and "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 689-90. An attorney's "strategic

choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Id*. at 690-91.

The test for prejudice requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding [because] [v]irtually every act or omission of counsel would meet that test." *Id*. at 693. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

On habeas review, the issue is not whether Petitioner has satisfied the *Strickland* standard, but rather, whether the state court's decision that *Strickland* was not met warrants relief under AEDPA's standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). This results in a "doubly" deferential standard of review in federal habeas proceedings. *Id*. (internal quotation marks and citation omitted). Thus, when a *Strickland* claim is rejected on the merits by the state court, a petitioner "must demonstrate that it was necessarily unreasonable" for the state court to rule as it did in order to obtain habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

*Claim #1: Failure to Prepare Defense Theory/Prepare Petitioner to Testify at Trial*

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to "adequately meet with Petitioner prior to trial, explain the defense theory to him, and prepare him for his testimony at trial." (ECF No. 1-1 at PageID 14.) Petitioner properly exhausted this claim

by presenting it to the TCCA in his post-conviction appeal.   (*See* ECF 12-13 at PageID 747, 750-

51.)   The TCCA addressed Petitioner's claim as follows:

> The petitioner argues trial counsel was ineffective for failing to adequately meet
> with him and prepare him to testify at trial.   The State contends trial counsel
> adequately met with the petitioner prior to trial.   As to this issue, the post-
> conviction court made the following findings:
>
>> [Trial counsel] talked with [the] petitioner a couple of times.   He
>> felt like he discussed the case with him adequately.   He went to the
>> property where the search and seizure occurred along with his
>> investigator and the girlfriend of the petitioner.   [The p]etitioner
>> was in custody in the Tennessee Department of Corrections (sic).
>> [Trial counsel] made [the] petitioner aware that they had a four-year
>> offer.   He spent time preparing the petitioner to testify.
>
> Based on our review of the record, we agree with the post-conviction court.
> Trial counsel testified he met with the petitioner multiple times to discuss trial
> strategy, witness testimony, and plea negotiations.   Additionally, trial [counsel]
> went to the crime scene on multiple occasions to develop an understanding of the
> property and spoke with all the individuals that lived on the property with the
> petitioner.   While trial counsel admitted he spent less time discussing trial
> preparation with the petitioner than he did plea negotiations and preparing the case
> for trial, this conduct was tactical given the petitioner's status as a career offender
> and because the petitioner was incarcerated at the time.   The post-conviction court
> accredited the testimony of trial counsel, and nothing in the record preponderates
> against the findings of the post-conviction court.   *See Tidwell* [*v. State*], 922
> S.W.2d [497,] 500 [(Tenn. 1996)].   Thus, the petitioner has not shown deficient
> performance on the part of trial counsel. The petitioner did not put on any proof
> that there was a reasonable probability that, but for trial counsel's failure to prepare
> the petitioner for trial, the result would have been different.   As a result, the
> petitioner is also unable to show prejudice, and is not entitled to relief on this issue.

*Delosh*, 2020 WL 5667487, at *7.

The TCCA's consideration of this claim of ineffective assistance of counsel was not

"contrary to" the standard announced in *Strickland*.   *See* § 2254(d)(1).   The TCCA correctly

identified *Strickland* as the controlling legal authority and applied both prongs of *Strickland* to the

facts of the case.   *Delosh*, 2020 WL 5667487, at *6-7.   As the Supreme Court explained in

*Williams*, "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."   529 U.S. at 406.

The TCCA's decision likewise did not involve an unreasonable application of *Strickland*. *See* § 2254(d)(1).   In analyzing the deficiency prong, the TCCA applied *Strickland*'s rule that counsel's representation should not "fall below an objective standard of reasonableness under prevailing professional norms."   *Delosh*, 2020 WL 5667487, at *7 (citing *Strickland*, 466 U.S. at 688.)   The TCCA considered trial counsel's testimony from the evidentiary hearing showing that he met with Petitioner "multiple times to discuss trial strategy, witness testimony, and plea negotiations."   *Id*.   Further, the TCCA noted that trial counsel "went to the crime scene on multiple occasions to develop an understanding of the property and spoke with all the individuals that lived on the property with the petitioner."   *Id*.   Though trial counsel admitted that "he spent less time discussing trial preparation with the petitioner than he did plea negotiations and preparing the case for trial," the TCCA determined that "this conduct was tactical given the petitioner's status as a career offender and because the petitioner was incarcerated at the time."   *Id*.   The TCCA's application of *Strickland*'s performance prong is not "so lacking in justification" to warrant relief under § 2254(d)(1).[2]   *Richter*, 562 U.S. at 103.

---

[2] In his reply, Petitioner claims that contrary to counsel's testimony at the evidentiary hearing, counsel never visited him prior to trial and failed to spend any time preparing him for trial.   (ECF No. 17 at PageID 877.)   This claim is belied by Petitioner's own testimony at his evidentiary hearing where he stated that he met with counsel "four or five times before trial." (ECF No. 12-12 at PageID 714.)

Petitioner also claims that he asked counsel to file a pretrial motion for a *Morgan* hearing regarding the admissibility of his prior convictions for impeachment purposes.   (ECF No. 17 at PageID 878.)   This claim appears for the first time in his reply, and it was not raised before the TCCA.   (*See* ECF 12-13 at PageID 747.)   "Because [Petitioner] failed to present the claim to the

The same is true of the TCCA's application of the prejudice prong.   As the TCCA noted, "[t]he petitioner did not put on any proof that there was a reasonable probability that, but for trial counsel's failure to prepare the petitioner for trial, the result would have been different."   *Delosh*, 2020 WL 5667487, at *7.   Without any evidence of prejudice, the TCCA concluded that it could not grant relief, *id*., which is consistent with *Strickland*'s requirement that both prongs be satisfied, *see* 466 U.S. at 687.

Finally, the TCCA's decision was not based on an unreasonable application of the facts. *See* § 2254(d)(2).   As Respondent points out, "Petitioner does not raise any particularized argument under 28 U.S.C. § 2254(d)(2)."   (ECF No. 14 at PageID 844.)   Nevertheless, the facts upon which the TCCA based its holding are supported by the record from the state post-conviction proceedings.   *See Pouncy*, 846 F.3d at 158.

*Claim #2: Failure to Negotiate a More Favorable Plea Agreement*

Petitioner next complains that trial counsel was ineffective for failing to convince the State to offer him a plea agreement to a misdemeanor offense.   (ECF No. 1-1 at Page ID 14.)   This claim is properly before the Court because Petitioner raised it before the TCCA on post-conviction appeal.   (ECF 12-13 at PageID 748, 751).   The TCCA addressed this claim as follows:

> The petitioner argues trial counsel was ineffective because he failed to enter into meaningful plea negotiations.   The State contends trial counsel met with prosecutors on several occasions to discuss the case and negotiated the best offer possible.   We agree with the State.
>
> To determine whether a petitioner is entitled to relief for ineffective assistance of counsel during plea negotiations, the petitioner has the burden of showing by a reasonable probability that, but for counsel's deficient representation, (1) the petitioner would have accepted the plea, (2) the prosecution would not have

state courts and no state court remedies remain available, the claim is procedurally defaulted." *Hodges*, 727 F.3d at 530.

withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed.   *Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014).

Here, the post-conviction court found that the petitioner failed to establish deficient representation and prejudice because trial counsel was able to negotiate a plea deal reducing the petitioner's sentence from eight years to four, and the petitioner voluntarily declined the offer.   This conduct is objectively reasonable.   While the petitioner claims he would have pled guilty if the State had reduced his charge to a misdemeanor, the petitioner also admitted trial counsel told him such a result was not likely.   Furthermore, the petitioner failed to present any proof establishing the State would have made such an offer.   Thus, the petitioner has failed to meet his burden and is not entitled to relief.   *Id.*

*Delosh*, 2020 WL 5667487, at *8.

The TCCA's decision is not contrary to federal law.   *See* § 2254(d)(1).   Although the TCCA did not refer to *Missouri v. Frye*, 566 U.S. 143 (2012) or *Lafler v. Cooper*, 566 U.S. 156 (2012)—the controlling Supreme Court precedent for claims of deficient performance in plea discussions—it did cite *Nesbit*, which incorporates both *Frye* and *Lafler* into its decision. *See Nesbit*, 452 S.W.3d at 800-01.   In any event, the "contrary-to" prong does not require citation to the Supreme Court's cases, nor even an "awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Davis v. Johnson*, 661 F. App'x 869, 876-77 (6th Cir. 2016) ("That the state court here did not identify the relevant federal standard by name . . . does not, by itself, speak to the decision's conformity with clearly established federal law for the purposes of § 2254(d)(1).").   Petitioner cannot show that the TCCA's decision was contrary to *Frye* and *Lafler* because the TCCA noted and applied the correct precedent as set out in *Nesbit*.   *See* § 2254(d)(1); *see also Davis*, 661 F. App'x at 876-77.

14

Petitioner likewise cannot not show that the TCCA's decision involved an unreasonable application of controlling precedent. *See* § 2254(d)(1). The TCCA analyzed the performance prong discussed in *Lafler* when it noted that trial counsel negotiated with the State for a reduction in the initial plea offer—from eight years down to four years of imprisonment. *See Delosh*, 2020 WL 5667487, at *8; *see also Lafler*, 566 U.S. at 163. Trial counsel also communicated the best offer made by the State, as required under *Frye*, but Petitioner rejected the offer and chose to go to trial.[3] *See Frye*, 566 U.S. at 145. Based on the record, the TCCA reasonably applied the performance prong when it denied habeas relief.

The TCCA also reasonably applied the prejudice prong. Petitioner was required to show that but for counsel's deficient performance, the State would have offered and not withdrawn a plea agreement for a misdemeanor and that the trial court would have accepted such an offer. *See Lafler*, 566 U.S. at 164. As the TCCA observed, Petitioner "failed to present any proof" that the State would have offered a plea agreement for a misdemeanor. *Delosh*, 2020 WL 5667487, at *8. Thus, the TCCA reasonably determined that Petitioner had failed to meet his burden of

---

[3] Petitioner claims in his reply that "counsel misled the post-conviction court in his testimony that Petitioner had asked him to negotiate his plea to a misdemeanor." (ECF No. 17 at PageID 878.) According to Petitioner, he only asked counsel to negotiate a plea whereby any sentence imposed for the methamphetamine offense would "run concurrent with his parole violation sentence." (*Id*. at PageID 879.) This claim is directly contradicted by his testimony at the evidentiary hearing where Petitioner stated that there was no plea offer that he would have accepted and that he simply wanted the charge dismissed because he "didn't do nothing." (ECF No. 12-12 at PageID 722-23.)

Also for the first time in his reply, Petitioner states that "he was not aware that [c]ounsel had negotiated his plea from a[n] eight[-]year sentence to a four[-]year sentence" and that "had he been made aware that the State was willing to offer him a four[-]year deal, he would have accepted that State's offer." (ECF No. 17 at PageID 879.) This claim is belied by the record from the evidentiary hearing where Petitioner explicitly testified that counsel "wanted [him] to take a . . . four-year offer." (ECF No. 12-12 at PageID 723.)

showing that he was prejudiced by counsel's alleged ineffective assistance during plea negotiations.

Petitioner does not argue that he is entitled to relief under § 2254(d)(2).   (*See* ECF No. 1-1 at PageID 14-17.)   Even if he had, his argument would fail because the record supports the TCCA's application of the facts regarding this claim.   *See Pouncy*, 846 F.3d at 158.

*Claim #3: Failure to File a Motion to Suppress Evidence*

Petitioner next argues that counsel was ineffective for failing to challenge the legality of the search of his property that led to the discovery of methamphetamine evidence.   (ECF No. 1-1 at PageID 15.)   This claim was properly exhausted in state court.   (*See* ECF 12-13, Page ID 748, 751).   The TCCA addressed this claim as follows:

> The petitioner alleges that trial counsel failed to investigate and challenge the probable cause supporting the search of his property and that the evidence obtained from the search should have been suppressed.   The State contends the parole search was lawful, and therefore, there were no grounds for trial counsel to suppress evidence from the search, and we agree.
>
> When trying to prove ineffectiveness in failing to suppress evidence, such as the evidence found during the parole search, the petitioner must demonstrate a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different.   *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).   When the accused moves to suppress evidence based on a search, he or she bears the burden of establishing standing to challenge the search, or a reasonable expectation of privacy in the place or thing being searched.   *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991).   The Tennessee Supreme Court has held that "parolees who are subject to a warrantless search condition may be searched without reasonable or individualized suspicion."   *State v. Turner*, 297 S.W.3d 155, 157 (Tenn. 2009).
>
> The record indicates the search of the petitioner's property was legal because he was on parole at the time of the search.   Trial counsel testified he did not object to the legality of the search because it was lawful as a condition of the petitioner's parole and an objection was not supported by case law.   Additionally, the petitioner testified he did not ask trial counsel to file a motion regarding the search and admitted he consented to searches as a condition of his parole.   Because the

16

> search was a condition of his parole, the petitioner does not have standing to contest the search.  *Oody*, 823 S.W.2d at 560; *Turner*, 297 S.W.3d at 157.  Additionally, the petitioner cannot show deficient performance as he failed to present any proof that trial counsel's failure to challenge the search was objectively unreasonable. [*Strickland*, 466 U.S.] at 688; *Goad*, 938 S.W.2d at 369.  The petitioner also failed to prove prejudice because he did not show a reasonable probability that, but for trial counsel's failure to investigate and challenge the search of petitioner's property, the outcome of the trial would have been different.  *Strickland*, 466 U.S. at 694.  Thus, the petitioner has failed to meet his burden and is not entitled to relief on this issue.

*Delosh*, 2020 WL 5667487, at *8.

The TCCA's decision is not contrary to clearly established federal law.  *See* § 2254(d)(1).  The TCCA correctly cited *Kimmelman* as the controlling precedent for claims of incompetent representation with respect to Fourth Amendment issues.  *See Delosh*, 2020 WL 5667487, at *8.

The TCCA also reasonably applied *Kimmelman* when denying habeas relief.  Under *Kimmelman*, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," and that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  477 U.S. at 375 (citing *Strickland*, 466 U.S. at 688, 694).  As the TCCA recognized, Petitioner had no reasonable expectation of privacy under the Fourth Amendment given the warrantless search condition of his parole.  *Delosh*, 2020 WL 5667487, at *8.  The TCCA therefore concluded that Petitioner lacked standing to contest the search.  *Id*.  Because Petitioner's Fourth Amendment claim lacked merit, he could not show that the result of the trial would not have been different because the evidence would not have been excluded.  *See Kimmelman*, 477 U.S. at 375.

Petitioner also fails to rebut the TCCA's factual determinations and their application in the decision by clear and convincing evidence.   (*See* ECF 1-1 at PageID 15; *see also* ECF 17 at PageID 879-80.)   He is therefore not entitled to habeas relief under § 2254(d)(2).

*Claim #4: Failure to Interview Exculpatory Witnesses*

Petitioner next claims that counsel was ineffective for failing to interview "potential exculpatory witnesses" prior to trial.   (ECF No. 1-1 at PageID 15.)   Petitioner has exhausted this claim.   (*See* ECF No. 12-13 at PageID 748, 751.)   The TCCA addressed the claim as follows:

> Trial counsel testified he visited the petitioner's property multiple times with an investigator.   He took pictures of the scene and interviewed Ms. McDonald, Ms. Landers, and Mr. Phillips, each of whom were living on the petitioner's property and present during both the bonfire party and the search of the property. According to trial counsel, the petitioner did not ask him to interview anyone who attended the bonfire party, nor did he provide trial counsel with a list of those individuals.   The petitioner admitted he did not ask trial counsel to interview the bonfire party attendees until the last day of trial and conceded trial counsel did not have enough time to investigate following the petitioner's request.

> When a petitioner contends trial counsel failed to interview witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.   *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).   "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."   *Id*.   The petitioner failed to produce any witnesses at the post-conviction hearing.   As a result, the petitioner failed to meet his burden regarding this issue, and he is not entitled to relief.

*Delosh*, 2020 WL 5667487, at *9.

The TCCA's decision does not contradict *Strickland*, nor does it constitute an unreasonable application of *Strickland*'s two-part test.   *See* § 2254(d)(1).   The TCCA rejected Petitioner's claim based on his failure to show that he was prejudiced by counsel's alleged deficient performance without explicitly addressing *Strickland*'s first prong.   *See Delosh*, 2020 WL

18

5667487, at *9.   As the Supreme Court explained in *Strickland*, however, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."   466 U.S. at 697.

The TCCA did not unreasonably apply the prejudice prong because Petitioner did not present the testimony of any potential exculpatory witnesses at his evidentiary hearing. *See Delosh*, 2020 WL 5667487, at *9.   Where a petitioner fails to "come forth with any proof" of the testimony of a potential witness, "[h]is failure to do so is fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different." *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009), *aff'd*, 699 F.3d 908 (6th Cir. 2012).

Petitioner likewise fails to satisfy his burden under § 2254(d)(2).   He makes no effort to rebut the TCCA's factual determination that he did not present any witness testimony at the post-conviction hearing with clear and conviction evidence.[4]   (*See* ECF No. 1-1 at PageID 15 & ECF No. 17 at PageID 880-81.)   He is therefore not entitled to relief under § 2254(d)(2).

---

[4] Petitioner claims in his reply that he provided post-conviction counsel with the name of "a few guests at the party for counsel [to] interview" but that counsel failed to contact them. (ECF No. 17 at PageID 881.)   He does not identify these potential witnesses or provide an affidavit setting out what their testimonies would have been.   (*See id.*)   To the extent that Petitioner seeks to raise a claim that his post-conviction counsel was ineffective, the Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim.   *See Coleman*, 501 U.S. at 752 (explaining that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," then "a petitioner cannot claim ineffective assistance of counsel in such proceedings.")   Ineffective assistance of post-conviction counsel is only relevant where it is cause for a petitioner's failure to comply with a state's procedural rule.   *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012).   Petitioner does not make a *Martinez*-based argument.   (*See generally* ECF No. 17 at PageID 881.)

*Claim #5: Failure to Investigate*

Petitioner asserts that he received ineffective assistance of counsel when his attorney failed to investigate his case and "identify an alternative source for the evidence of methamphetamine manufacturing found on the Petitioner's property."   (ECF No. 1-1 at PageID 15.)   This claim was raised in Petitioner's brief before the TCCA and is exhausted.   (ECF No. 12-13 at PageID 749-51.)   The TCCA addressed this claim as follows:

> The petitioner argues trial counsel failed to investigate or develop alternative origins of the alleged methamphetamine lab when other methamphetamine-related crimes had occurred in the area.   The State contends trial counsel investigated and presented other theories of the origin of the methamphetamine lab, but the jury chose not to accept them.   As to this issue, the post-conviction court made the following findings:
>
>> [Trial counsel] had [defense] theories regarding the Dr. Pepper bottle that was the subject of the manufacture of the meth[amphetamine] and the bonfire causing the burned evidence. The bonfire had been several weeks earlier.   He felt like the tin foil that was found only showed use or possession of the meth[amphetamine] and he covered this theory during trial and in his closing argument.   He stated that [the petitioner] never said that his girlfriend, Ms. McDonald, was the responsible party.
>>
>> [Trial counsel] worked on the theories that [the petitioner] did not have a meth[amphetamine] lab.   He went over how he attacked the findings of the officers and presented theories available.
>>
>> ***
>>
>> [Trial counsel] had a bad fact situation, and he performed as well as any defense attorney could have performed under the circumstances as they existed . . . .   There was little defense to the case other than the petitioner testifying that the information found and seized did not belong to him.
>
> Trial counsel testified he made a strategic decision to argue that the evidence found on the petitioner's property showed use and not "promotion" of methamphetamine. Trial counsel argued the flammables found at the scene were used to start the bonfires at the party and were not methamphetamine-related.   He also argued that because the alleged methamphetamine labs were on the property for three weeks,

the State could not prove who actually interacted with the labs.   Trial counsel also presented the theory that the Dr. Pepper bottle and the tin foil found at the scene only showed methamphetamine use, not manufacturing.   As such, trial counsel argued the State's evidence was at most sufficient to show methamphetamine use, and insufficient to show the petitioner was manufacturing methamphetamine. These theories were presented to and weighed by the jury, after which, the jury found the petitioner guilty.

Trial counsel's defense theories were reasonable and are entitled to deference on collateral review.   *Strickland*, 466 U.S. at 690-91.   The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel.   *Cooper*, 847 S.W.2d at 528.   Deference is given to sound tactical decisions made after adequate preparation.   *Id*.   Here, the post-conviction court accredited trial counsel's decisions regarding the appropriate defense for the petitioner's case.   *See Tidwell*, 922 S.W.2d at 500.   As a result, trial counsel's conduct was not deficient.   Additionally, the petitioner did not present any proof at the post-conviction hearing to support his assertion that there was anyone else to blame for the evidence of methamphetamine manufacturing found on his property.   *See Black*, 794 S.W.2d at 757-58.   The petitioner is not entitled to relief.

*Delosh*, 2020 WL 5667487, at *12-13.

The TCCA correctly cited and applied *Strickland* in affording deference to counsel's reasonable trial strategy.   *See* 466 U.S. at 690-91.   Thus, the TCCA's decision is "run-of-the-mill" and does not "fit comfortably" within § 2254(d)(1)'s contrary-to clause.   *See Williams*, 529 U.S. at 406.   Petitioner does not argue otherwise.   (*See* ECF No. 1-1 at PageID 15 & ECF No. 17 at PageID 881-82.)   He has therefore failed to show that he is entitled to relief under § 2254(d)(1)'s contrary-to clause.

Petitioner similarly fails to show that the TCCA unreasonably applied *Strickland*.   In addressing the performance prong, the TCCA noted that counsel attempted to show that the flammables were not used to manufacture methamphetamine, but rather were used to start bonfires at a party.   *Delosh*, 2020 WL 5667487, at *13.   Counsel also argued that because the alleged methamphetamine labs were on the property for weeks, the State could not prove Petitioner's

21

involvement with the labs. *Id*. Finally, counsel argued that the bottle and tin foil found at the scene were indicative of mere methamphetamine use, not manufacturing. *Id*. The TCCA reasonably applied *Strickland* in assessing counsel's performance. *See* § 2254(d)(1).

With respect to prejudice, the TCCA noted that Petitioner presented no proof at the evidentiary hearing that there was "anyone else to blame for the evidence of methamphetamine manufacturing found on his property." *Delosh*, 2020 WL 5667487, at *13. Thus, Petitioner failed to prove a reasonable probability of a different outcome, and the TCCA did not unreasonably apply the prejudice prong based on Petitioner's failure to present such evidence.[5] *See Strickland*, 466 U.S. at 694.

Petitioner likewise fails to provide clear and convincing evidence that rebuts the TCCA's factual determinations, nor does he show how the TCCA's decision was based on an unreasonable determination of the facts. (*See* ECF 1-1 at PageID 15 & ECF 17 at PageID 881-82.) As such, he is not entitled to relief under § 2254(d)(2).

---

[5] Petitioner urges in his reply that trial counsel should have argued that his neighbor was the source of the methamphetamine evidence, and that the tree line separating his property from his neighbor's was big enough to hide someone doing drugs on his property. (ECF No. 17 at PageID 882.) As the TCCA noted, however, trial counsel presented this theory at trial. *Delosh*, 2020 WL 5667487, at *5. Petitioner further claims that he provided counsel with newspaper articles reporting other drug-related crimes in the area and that counsel should have pursued that evidence. (ECF No. 17 at PageID 882.) Trial counsel testified at the post-conviction hearing that because those crimes had occurred years before Petitioner's case, he did not believe that they were relevant to the incident on Petitioner's property. (ECF No. 12-12 at PageID 680.)

Trial counsel testified that he made the strategic decision to argue that the State's evidence showed mere methamphetamine use, rather than pursue Petitioner's preferred theory that there was an alternative source of the drug-related evidence. *Delosh*, 2020 WL 5667487, at *5. The TCCA concluded that counsel's strategy was reasonable and was entitled to deference on collateral review, citing *Strickland*. *Id*. at *13. Although Petitioner suggests in his reply that there were alternate theories counsel could have pursued, he does not suggest, much less prove, that the TCCA's application of *Strickland* was unreasonable. (*See* ECF No. 17 at PageID 881-82.)

*Claim #6: Failure to Call Forensic Expert*

Petitioner next alleges that counsel was ineffective for failing to retain a defense expert "to rebut the prosecution's view of the evidence."   (ECF No. 1-1 at Page ID 15.)   This claim was properly exhausted in Petitioner's post-conviction appeal.   (*See* ECF No. 12-13 at PageID 748, 751-52.)   The TCCA denied relief as follows:

> The petitioner alleges trial counsel was ineffective for failing to retain an expert to examine the drug and physical evidence found at the crime scene.   The State contends the physical evidence in this case was destroyed because methamphetamine labs are extremely hazardous, and as such, there was no evidence which could safely be taken to a lab for testing or stored for trial, making an expert unnecessary.   Upon our review, the record shows the petitioner failed to meet his burden and is not entitled to relief.
>
> Initially, we note, that the petitioner failed to present an expert at the post-conviction hearing.   As previously stated, a petitioner who claims ineffective assistance of counsel for failing to call a witness must present the witness during the post-conviction hearing.   *Black*, 794 S.W.2d at 757.   Because the petitioner failed to call an expert witness at the post-conviction hearing, he cannot meet his burden and is not entitled to relief.   *Id*.
>
> Despite the petitioner's failure to call an expert, trial counsel testified he made a strategic and well-informed decision not to call an expert or file a motion regarding the loss of evidence because the evidence had been lawfully destroyed by law enforcement.   Trial counsel testified he had handled several methamphetamine cases and was aware that law enforcement routinely destroyed methamphetamine labs because they are hazardous and extremely dangerous.   Thus, trial counsel knew that the filing of such a motion was frivolous.   Deference is given to sound tactical decisions made after adequate preparation for the case.   *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).   As a result, the petitioner is not entitled to relief on this issue.

*Delosh*, 2020 WL 5667487, at *9.

The TCCA's decision does not contradict *Strickland*'s performance and prejudice prongs. The decision is therefore "run-of-the-mill" and does not fall within § 2254(d)(1)'s "contrary to" clause.   *See Williams*, 529 U.S. at 406.

The TCCA's decision also does not involve an unreasonable application of *Strickland*. *See* § 2254(d)(1). The TCCA noted that Petitioner had failed to present a forensic expert at the evidentiary hearing and, therefore, could not meet his burden of showing that he was prejudiced. *Delosh*, 2020 WL 5667487, at *9. Petitioner's failure to present proof of prejudice "is fatal to any attempt to establish" ineffective assistance of counsel under *Strickland*. *See Moreland*, 635 F. Supp. 2d at 712.

With respect to *Strickland*'s performance prong, the TCCA credited counsel's testimony that he did not retain a forensic expert because the evidence "had been lawfully destroyed by law enforcement." *Delosh*, 2020 WL 5667487, at *9; (ECF No. 12-12 at PageID 680-81.) Accordingly, there was no reason to hire a forensic expert. The TCCA determined that counsel's decision was "sound" given his knowledge gained from handling "several methamphetamine cases." *Delosh*, 2020 WL 5667487, at *9. As the Supreme Court noted in *Strickland*, well-informed "strategic choices" are entitled to deference and are "virtually unchallengeable." 466 U.S. at 690.

Petitioner does not argue that he is entitled to relief under § 2254(d)(2).[6] Even if he had, such argument would fail because the record supports the fact that Petitioner failed to present an expert witness at the evidentiary hearing. (*See* ECF No. 12-12 at PageID 717-18.) The TCCA

---

[6] Petitioner does not challenge the TCCA's analysis of *Strickland*'s prejudice prong. Instead, he argues that "the trial court should have dismissed the indictment due to the State's reckless disregard for testing and preserving the evidence," and he contends that trial counsel should have moved for the jury to be instructed on the State's destruction of allegedly exculpatory evidence. (ECF No. 17 at PageID 882-83.) Petitioner did not raise these claims before the TCCA, and no state court remedies remain available. (*See* ECF No. 12-13 at PageID 746-54.) As such, these newly raised claims are procedurally defaulted and not properly before this Court. *See Hodges*, 727 F.3d at 530.

relied solely on this fact in adjudicating *Strickland*'s prejudice prong.   *Delosh*, 2020 WL 5667487, at *9.   This fact is correct and reasonable because it is supported by the record.   *See Pouncy*, 846 F.3d at 158.   As such, Petitioner is not entitled to habeas relief under § 2254(d)(2).

   *Claim #7: Failure to Strike Juror*

   Petitioner argues that counsel was ineffective for failing "to conduct a thorough voire dire [sic]" and for failing to strike an allegedly biased juror.   (ECF No. 1-1 at PageID 15.)   Petitioner properly exhausted this claim before the TCCA in his post-conviction appeal.   (*See* ECF No. 12-13 at PageID 748, 752.)   The TCCA analyzed this claim as follows:

> The petitioner argues trial counsel failed to strike a juror that admitted to attending the same gym as the prosecutor.   The State contends the prosecutor did not know any of the jurors; therefore, there was no reason for trial counsel to exclude the juror.   As to this issue, the post-conviction court found the following:
>
>> There was an issue as to whether or not a juror went to the same gym as the Assistant District Attorney General trying the case.   [The petitioner] did not remember the name of the juror.   [Trial counsel] was not asked to excuse the juror.   [Trial counsel] felt that if there had been any evidence that this juror had a relationship with the Assistant District Attorney, he would have challenged her.
>
> Both the United States and Tennessee Constitutions guarantee a criminal defendant the right to trial by an impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9.   "The ultimate goal of voir dire is to ensure that jurors are competent, unbiased and impartial."   *Smith v. State*, 357 S.W.3d 322, 347 (Tenn. 2011) (citing *State v. Hugueley*, 185 S.W.3d 356 (Tenn. 2006)).   Counsel is granted deference when conducting voir dire.   *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004).   "An attorney's actions during voir dire are considered to be matters of trial strategy . . . a strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."   *Id*. (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)).
>
> For trial counsel's conduct to be ineffective based on the failure to strike a biased juror, the petitioner must show the juror was actually biased against him.   *Id*. at 674.   "Actual bias is 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality."   *Id*. at 673

(quoting *Hughes*, 258 F.3d at 463).   "A juror's express doubts to her own impartiality on voir dire does not necessarily entail a finding of actual bias."   *Id*. Moreover, the Supreme Court has upheld "the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on voir dire."   *Id*.; *see Patton v. Yount*, 467 U.S. 1025 (1984).

Here, the petitioner testified he recalled hearing a juror claim they belonged to the same gym as the prosecutor.   The petitioner failed to present any proof during the post-conviction hearing as to which juror he was referring or as to how he was prejudiced by the juror.   While admitting he would have struck a juror he believed had a significant relationship with the prosecutor, trial counsel did not recall the juror's alleged admission.   Based on the record before us, the petitioner has failed to prove his factual allegation that a juror had a relationship, however slight, with the prosecutor and, therefore, is not entitled to relief.   Furthermore, even if a juror had made such a disclosure during voir dire, the petitioner has failed to show that trial counsel's decision not to strike the juror permeated the trial with obvious unfairness.   *Miller*, 385 F.3d at 672.   As a result, the petitioner has failed to show trial counsel was ineffective as it relates to this issue.   Accordingly, the petitioner is not entitled to relief.

*Delosh*, 2020 WL 5667487, at *10.

The TCCA based its decision on *Strickland*'s performance prong, explaining that "[a]n attorney's actions during voir dire are considered to be matters of trial strategy."   *Id*. (quoting *Miller*, 385 F.3d at 672).   The TCCA then recognized, consistent with *Strickland*, that "a strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."   *Id*. (quoting *Miller*, 385 F.3d at 672); *accord Strickland*, 466 U.S. at 690 (agreeing that well-informed "strategic choices" are entitled to deference and are "virtually unchallengeable").   The TCCA's decision was therefore not contrary to federal law.   *See* § 2254(d)(1).

The TCCA's decision also did not involve an unreasonable application of *Strickland*. *See id.*   The TCCA correctly noted that it was Petitioner's burden to "show the juror was actually biased against him."   *Delosh*, 2020 WL 5667487, at *10.   Petitioner failed to even identify which

juror he was referring to at the evidentiary hearing or explain how he was prejudiced by the juror. (*See* ECF No. 12-12 at PageID 718, 726-27.)   Because there was no evidence in the record of an "actually biased" juror, the TCCA noted counsel's testimony that he would have struck a juror if he knew that the juror was a personal friend of the prosecutor.  *Delosh*, 2020 WL 5667487, at *10; (ECF No 12-12 at PageID 697-98).   Based on the record, the TCCA reasonably applied *Strickland*'s performance prong, and Petitioner is not entitled to relief based on an unreasonable application of federal law.  *See* § 2254(d)(1).

Petitioner also fails to show that he is entitled to relief under § 2254(d)(2).   Petitioner offers only the conclusory allegation that because the at-issue juror was familiar with the prosecutor, she was biased against him.  (ECF No. 17 at PageID 884.)   He does not argue, however, that the TCCA's determination of the facts was unreasonable based on the evidence presented.  (*See id.* at PageID 883-84.)   As such, he has failed to rebut the presumption of correctness that attaches to the TCCA's factual findings.   *See* § 2254(e)(1).

*Claim #8: Failure to Adequately Challenge State's Evidence at Trial*

Petitioner claims that counsel was ineffective for failing to adequately challenge the State's evidence at trial.   (ECF No. 1-1 at PageID 15.)   Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise it before the TCCA.   (ECF No. 14 at PageID 857.)   The Court has reviewed Petitioner's post-conviction appeal brief, and there is no claim that could be liberally construed as the claim Petitioner now raises in his § 2254 petition.   (*See generally* ECF 12-13 at PageID 747-53.)   Although the Court must construe a *pro se* § 2254 petition liberally, it is Petitioner's responsibility to adequately plead his claims.   *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts (advising that a petition must

27

"specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground"). Petitioner's claim is too general for the Court to liberally construe it as one of the claims raised before the TCCA.

Under Tennessee Code Annotated § 40-30-106(g), the claim is now waived in state court based on Petitioner's failure to present it. Thus, Petitioner has procedurally defaulted on the claim.[7] *See Hodges*, 727 F.3d at 530.

*Claim #9: Failure to Object to Investigator Hughes's Testimony*

Petitioner faults counsel for failing to object to Investigator Hughes's trial testimony. (ECF No. 1-1 at PageID 15.) This claim was raised before the TCCA in Petitioner's post-conviction appellate brief. (ECF 12-13 at PageID 749, 751-52.) Therefore, it is properly exhausted. The TCCA considered Petitioner's claim as follows:

> The petitioner alleges trial counsel was ineffective for failing to object to Investigator Hughes's unqualified, expert testimony regarding methamphetamine lab operations. The State contends that Investigator Hughes was not declared an expert because he testified from his training and experience working with methamphetamine labs and that trial counsel vigorously cross-examined him about his identification of the petitioner's methamphetamine lab and the numerous items missing which would be needed to establish the alleged lab. The post-conviction

---

[7] Petitioner fails to address the State's argument that this claim is procedurally defaulted in his reply. (*See* ECF No. 17 at PageID 884-86.) Instead, he repeats his arguments that counsel was ineffective for failing to challenge the search of his property and move to suppress the drug-related evidence; that counsel should have retained an expert to examine the drug and physical evidence found at the crime scene; and that counsel should have filed a motion regarding the destruction of physical evidence by law enforcement. (*Id*. at PageID 885-86.) These claims have already been addressed elsewhere in this order.

Regardless of default, this claim of ineffective assistance of counsel is without merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting that 28 U.S.C. § 2254(b)(2) permits a federal court to "deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies"). Here, Petitioner offers only conclusory allegations of ineffective assistance of counsel without any evidence in support. (*See* ECF No. at PageID 885-86.) "Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

court found the following:   "[Trial counsel] stated that [Investigator] Hughes was never called an expert by the [trial court] and that he did not want him to be termed as an expert in front of the jury.   This was part of his trial strategy."

Trial counsel testified he did not want the jury to view Investigator Hughes as an expert and strategically chose not to have Investigator Hughes qualified as an expert. This was a tactical decision by trial counsel.   The post-conviction court's order denying relief is an accreditation of trial counsel's testimony, and nothing in the record preponderates against the post-conviction court's factual findings.   *See Tidwell*, 922 S.W.2d at 500.   Deference is given to trial counsel's sound tactical decisions made after adequate preparation for the case.   *Cooper*, 847 S.W.2d at 528.   Moreover, the petitioner argues Investigator Hughes's testimony was outside the scope of his knowledge because he was not qualified as an expert.   Yet, the petitioner did not provide proof at the post-conviction hearing to establish that trial counsel's decision was objectively unreasonable or that he was prejudiced in any way by trial counsel's decision.   *Strickland*, 466 U.S. at 687.   As a result, the petitioner is not entitled to relief.

*Delosh*, 2020 WL 5667487, at *11.

The TCCA again correctly cited and applied *Strickland*'s two-part test, rendering the decision "run-of-the-mill."   *See Williams*, 529 U.S. at 406.   Petitioner does not argue that the TCCA's decision was not run-of-the-mill or otherwise argue that he is entitled to relief under § 2254(d)(1).   (*See* ECF No. 1-1 at PageID 15.)

Petitioner also provides no argument that the TCCA's application of *Strickland* was unreasonable.[8]   (*See id.*)   The TCCA's application of *Strickland*'s two-part test was nonetheless reasonable.   The TCCA first addressed trial counsel's performance and applied *Strickland*'s rule that "[d]eference is given to trial counsel's sound tactical decisions made after adequate

---

[8] In his reply, Petitioner argues that because Investigator Hughes testified regarding his training and experience in the area of methamphetamine labs, the jury necessarily weighed his testimony similar to that of an expert.   (ECF No. 17 at PageID 887-88.)   He does not, however, challenge the TCCA's application of *Strickland*, nor does he address the deference afforded to counsel's tactical decision not to qualify Investigator Hughes as an expert.   (*See id.*)   As such, he has failed to show that the TCCA's decision was "so lacking in justification" to entitle him to habeas relief.   *See Richter*, 562 U.S. at 103.

preparation for the case." *Delosh*, 2020 WL 5667487, at *11; *accord Strickland*, 466 U.S. at 689. The TCCA supported its application of the rule with trial counsel's testimony from the evidentiary hearing. *See Delosh*, 2020 WL 5667487, at *11. Trial counsel explained that he did not want the jury to view Investigator Hughes as an expert because such a designation would "lend some credence to his testimony." (ECF 12-12 at PageID 700.) Thus, as part of his "trial tactic" he chose not to have Investigator Hughes qualified as an expert. (*Id.*)

The TCCA also reasonably applied *Strickland*'s prejudice prong. The TCCA noted that Petitioner provided no proof as the evidentiary hearing that he was prejudiced by counsel's strategic decision not to have Investigator Hughes qualified as an expert. *Delosh*, 2020 WL 5667487, at *11. Thus, he failed to show that but for trial counsel's failure to qualify Investigator Hughes as an expert, there was a "reasonable probability" that the outcome at trial would have been different. *See Strickland*, 466 U.S. at 694. Here, the TCCA's application of *Strickland*'s two-part test was not so lacking in justification to warrant relief under the unreasonable-application clause. *See Richter*, 562 U.S. at 103.

Petitioner does not contest the correctness of the TCCA's factual findings, nor does he attempt to rebut the presumption of correctness with clear and convincing evidence. *See Ayers*, 623 F.3d at 308. Because the TCCA's factual findings are reasonable and supported by the record, Petitioner is not entitled to relief under § 2254(d)(2). *See Pouncy*, 846 F.3d at 158.

*Claim #10: Failure to Object to Improper Impeachment*

Petitioner argues that his attorney was ineffective for failing to object to the State's improper impeachment during cross-examination. (ECF No. 1-1 at PageID 15.) He clarifies in his reply that this claim relates to his post-conviction claim that the State mischaracterized his

previous theft conviction during cross-examination and that counsel should have objected.

(ECF No. 17 at PageID 888.)   The TCCA rejected this claim as follows:

> The petitioner argues trial counsel's failure to object to the State's cross-examination about his previous theft conviction was highly prejudicial and suggests the State mischaracterized the factual basis for the conviction.   At the post-conviction hearing, the petitioner produced an incident report for the underlying offense and stated the incident report indicated only food items were stolen.   The petitioner contends the State misused the previous offense by asserting the stolen items were items used to manufacture methamphetamine.   Trial counsel stated that the State provided him with notice of the State's intent to use the prior theft conviction and admitted he should have objected to the State's questioning regarding the stolen items.
>
> Tennessee Rule of Evidence 609 states felony convictions or other misdemeanor convictions involving dishonesty are admissible impeachment evidence.   Theft crimes are viewed as crimes of dishonesty.   *See State v. Butler*, 626 S.W.2d 6 (Tenn. 1981).   When the witness in a criminal trial is the accused, the prosecution must give pretrial notice to the defendant.   *State v. Morgan*, 541 S.W.2d 385 (Tenn. 1976).   Here, the petitioner was questioned about a theft conviction and the State gave trial counsel notice, making the State's impeachment evidence admissible.
>
> Under a claim of ineffective assistance of counsel, the petitioner carries the burden of showing the State's use of evidence was prejudicial.   *See Strickland*, 466 U.S. at 694.   The petitioner argued trial counsel's failure to object allowed the State to mislead the jury as to the petitioner's prior history of methamphetamine use and manufacturing.   At the post-conviction hearing the only proof offered by the petitioner was that the State "paint[ed] him as a meth[amphetamine] cook."   However, the petitioner failed to produce any evidence showing an objection by trial counsel would have resulted in the exclusion of the impeachment evidence. *See Black*, 794 S.W.2d at 757-58.
>
> The record reflects an abundance of evidence on which a jury could convict the defendant, even with trial counsel's failure to object.   According to the proof at trial, methamphetamine labs and proof of manufacturing methamphetamine were found on the petitioner's property; the officer responsible for neutralizing the danger of those methamphetamine labs testified to where he found the labs, how he documented the labs, and how he destroyed the labs; and the petitioner testified he had been a methamphetamine user for fifteen years.   When viewed in light of the overwhelming evidence presented at trial, the petitioner has failed to show that the outcome of his case would have been different had trial counsel objected to the

State's line of questioning.   Thus, the petitioner is unable to prove prejudice and is not entitled to relief on this issue.

*Delosh*, 2020 WL 5667487, at *12.

The TCCA correctly cited *Strickland* as the controlling standard for this claim, and Petitioner does not argue otherwise.   (*See* ECF 1-1 at PageID 15.)   As such, he has failed to show that he is entitled to habeas relief under § 2254(d)(1) because the TCCA's decision was "contrary to" clearly established federal law.

Petitioner is likewise unable to show that he is entitled to relief because the TCCA's application of *Strickland* was unreasonable.   *See* § 2254(d)(1).   The TCCA bypassed the performance prong and considered whether Petitioner carried his burden of showing that counsel's failure to object was prejudicial.   *See Delosh*, 2020 WL 5667487, at *12.   The TCCA noted that Petitioner had produced no evidence showing that "an objection by trial counsel would have resulted in the exclusion of the impeachment evidence."   *Id*.   Regarding the lack of evidence, Petitioner's only proof at the evidentiary hearing was his own self-serving assertion that counsel's failure to object affected the trial.   (*See* ECF No. 12-12 at PageID 713.)

The TCCA's application of the prejudice prong was also reasonable given the "abundance of evidence on which a jury could convict the defendant, even with trial counsel's failure to object." *Delosh*, 2020 WL 5667487, at *12.   As the TCCA recounted, Petitioner admitted to being a methamphetamine user for 15 years; methamphetamine labs and physical evidence consistent with methamphetamine manufacturing were found on Petitioner's property during a lawful search; and there was testimony from investigators about recovering, documenting, and neutralizing the lab.   *Id*.   Where there is "overwhelming evidence" of a petitioner's guilt, "it is difficult to conclude that there exists a reasonable probability that but for the alleged errors, the

32

result [at trial] would have been different." *Lundgren v. Mitchell*, 440 F.3d 754, 775 (6th Cir. 2006). Petitioner has failed to show that he is entitled to relief under § 2254(d)(1).

Petitioner again fails to raise any challenge to the TCCA's factual determinations or to the reasonableness of the TCCA's decision based on those facts. (*See* ECF 1-1 at PageID 15 & ECF No. 17 at PageID 888-89.) Instead, Petitioner argues in his reply that the State's cross-examination about his previous theft conviction amounted to prosecutorial misconduct. (ECF No. 17 at PageID 888-89.) This claim, however, was never raised before the TCCA and is procedurally barred. *See Hodges*, 727 F.3d at 530.

*Unexhausted Claim – Ineffective Assistance of Appellate Counsel*

For the first time in his reply, Petitioner argues that his appellate counsel was ineffective for failing to seek discretionary review in the Tennessee Supreme Court after the TCCA affirmed his conviction and sentence on direct appeal. (ECF No. 17 at PageID 889-90.) Petitioner did not raise this claim in his post-conviction appeal to the TCCA, therefore, it is procedurally barred. (*See* ECF No. 12-13 at PageID 746-54.) Petitioner makes no attempt to argue cause and actual prejudice, nor does he argue that his claim should be exempted from the procedural bar based on his innocence. *See House*, 547 U.S. at 536; *see also Schlup*, 513 U.S. at 315.

In any event, Petitioner's claim is without merit because "a defendant has no right to counsel when pursuing a discretionary state appeal." *Byrd v. Byrd*, No. 21-5422, 2021 WL 7162076, at *2 (6th Cir. Nov. 12, 2021) (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)). "[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman*, 501 U.S. at 752. Thus, "the failure to file for [discretionary] review

cannot amount to constitutionally ineffective assistance." *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009).

## APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks and citation omitted). A COA does not require a showing that the appeal will succeed. *Id.* at 337. Courts should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

Because Petitioner's claims are either without merit or procedurally defaulted, the Court **DENIES** a certificate of appealability.

Additionally, Federal Rule of Appellate Procedure 24(a)(1) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith,

34

or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed

in forma pauperis in the appellate court.   *See* Fed. R. App. P. 24(a) (4)-(5).   In this case, for the

same reasons the Court denies a COA, the Court determines that any appeal would not be taken in

good faith.   It is therefore **CERTIFIED**, pursuant to Rule 24(a) that any appeal in this matter

would not be taken in good faith and leave to appeal in forma pauperis is **DENIED**.[9]

      **IT IS SO ORDERED**.

        **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 28, 2024.

---

[9] If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this Order.   *See* Fed. R. App. P. 24(a)(5).